# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| FOUR A'S INVESTMENT COMPANY, L.L.C. et al.,<br>Plaintiffs,<br>v.<br><br>BANK OF AMERICA CORPORATION,<br>Defendant. | Case No. 09-00351-CV-W-FJG |

## ORDER

Currently pending before the Court is Defendant's Motion to Dismiss Plaintiffs Nadir Alaiwat, Melissa Alaiwat and Capital Lending Group, L.L.C. (Doc. # 31), defendant's Motion to Strike Expert Testimony of Michael Kelsay (Doc. # 38) and defendant's Motion for Summary Judgment (Doc. # 44).

### I. BACKGROUND

Plaintiff Four A's Investment Company is a Missouri limited liability company operating in Missouri. Plaintiffs Nadir Alaiwat and Melissa Alaiwat are husband and wife and are member-managers of Four A's and plaintiff Capital Lending Group, LLC. Glen Sumler was a Senior Small Business Specialist employed by Bank of America. Mr. Alaiwat applied and was approved to open a Jimmy John's sandwich shop franchise. In order to finance the purchase of the franchise, Mr. Alaiwat contacted Bank of America. After an initial telephone conference, Mr. Sumler faxed Mr. Alaiwat an application. On September 4, 2007, Mr. Alaiwat filled out a Personal Financial Statement as part of the loan application. In the next couple of days, Mr. Alaiwat met with Mr. Sumler at a Bank

of America branch in Lee's Summit, Missouri and gave him the Personal Financial Statement and some additional financial information. During the meeting, Mr. Sumler allegedly inquired about Mr. Alaiwat's last name and where the name originated from. Mr. Alaiwat told him that he was from the Middle East and he was born in Jerusalem. Mr. Alaiwat testified that people often ask him about his name and that he was not offended by the question.

At the time that Mr. Alaiwat applied for the loan, Bank of America did not extend loans to prospective franchisees. These type of loan applications were sent to Bank of American's Government Lending Department which eventually forwarded them to third party lenders, such as CIT. Mr. Sumler believes that the Four A's application was sent to the Bank of America Government Lending Department approximately a week to ten days after he met with Mr. Alaiwat, which would have been in approximately mid-September 2007.

From September 17, 2008 to September 20, 2007, Mr. Sumler was out of the office due to illness. Upon returning to work, Mr. Sumler learned of a death in his family. This family emergency caused Mr. Sumler to be absent until October 1, 2007. After returning to work, Mr. Sumler accidentally deleted an email from Bank of American's Government Lending Group requesting additional information from Four A's in order to forward the application to the outside lender, CIT.

On October 25, 2007, Mr. Sumler informed Mr. Alaiwat that Four A's application would need to go to CIT for consideration. Mr. Sumler attached the CIT application to the email. Mr. Sumler explains that he had accidentally deleted an earlier email from the Government Lending Department requesting additional information. Mr. Sumler

tells Mr. Alaiwat that if he wants to continue, they can rush the paperwork through to CIT.  After receiving the email, Mr. Alaiwat withdrew Four A's loan application from Bank of America.  Because the loan application was withdrawn, neither Bank of America nor CIT made a decision on Four A's loan application.  Four A's subsequently submitted a loan application directly to CIT on November 5, 2007.  Four A's application was approved and Four A's accepted CIT's loan proposal terms on November 26, 2007.  The CIT loan funded in late July 2008.

Plaintiffs allege that Bank of American's actions caused a thirty-one week delay in the opening of the Jimmy John's franchise, from February 1, 2008 until September 9, 2008.  Plaintiffs claim that this delay caused them to construct a new facility, as opposed to being able to acquire an existing building, caused them to incur additional construction costs of $100,000 and also caused them to incur an additional amount in lease payments for the larger facility which had to be built.

On November 23, 2009, plaintiffs amended their Complaint and named three additional plaintiffs: Nadir Alaiwat, Melissa Alaiwat and Capital Lending Group, L.L.C.  Bank of America moves to dismiss there plaintiffs because they lack standing to sue in their individual capacities.  Bank of America also moves for summary judgment on all five counts of plaintiffs' Complaint.  The Court will address each of these motions in turn.

## II. STANDARDS

In Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007), the Supreme Court rejected the "no set of facts" language from Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).  The Court stated:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . . Factual allegations must be enough to raise a right to relief above the speculative level . . .on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . .

Id. at 1964-65 (internal citations and quotations omitted). The Court went on to note that, "of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." Id. at 1965 (internal citations and quotations omitted). The Court emphasized that "we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face. Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, the complaint must be dismissed." Id. at 1974. "In considering a motion to dismiss, courts accept the plaintiff's factual allegations as true, but reject conclusory allegations of law and unwarranted inferences." Silver v. H&R Block, Inc., 105 F.3d 394, 397 (8th Cir. 1997).

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If the moving party meets this requirement, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. 242, 248 (1986). In Matsushita Electric Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S.

4

574, 586 (1986), the Court emphasized that the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts" in order to establish a genuine issue of fact sufficient to warrant trial. In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. Matsushia, 475 U.S. 574, 588; Tyler v. Harper, 744 F.2d 653, 655 (8th Cir. 1984), cert. denied, 470 U.S. 1057 (1985).

## III. DISCUSSION

### A. MOTION TO DISMISS NADIR ALAIWAT, MELISSA ALAIWAT AND CAPITAL LENDING GROUP, LLC.

Bank of America argues that Nadir Alaiwat, Melissa Alaiwat and Capital Lending Group should be dismissed because they lack standing. Bank of America argues that because the loan application was submitted on behalf of plaintiff Four A's Investment Company, all claims arising out of the application belong to Four A's. Nadir Alaiwat and Melissa Alaiwat are member-managers of Four A's. They are also member-managers of Capital Lending Group. Bank of America argues that Four A's was the corporate entity that submitted the loan application, thus it is Four A's which has standing to bring claims arising out of the processing of that loan. Bank of America argues that in Missouri, an individual shareholder of a corporate entity lacks standing to sue in his or her individual capacity for damages to the corporate entity. The First Amended Complaint states, "Plaintiff Four A's, at all times herein acting by and through its member and officer Nadir Alaiwat, submitted to Defendant a loan application, in proper

5

form, for the purpose of acquiring funds for the purchase of a Jimmy John's restaurant franchise, the construction of the restaurant building, the hiring of employees, and the conducting of day-to-day business of the restaurant" (First Amended Complaint ¶ 7). All the plaintiffs allege that they have suffered damages as a result of Bank of America's alleged failure to properly process the loan. Plaintiff allege that Four A's was delayed in starting its business by more than 31 weeks, Nadir and Melissa Alaiwat were required to use their personal funds in order to keep the business in operation during the delay, including having to use $30,000 from a personal injury settlement received by Melissa Alaiwat, $145,000 from joint personal funds and the withdrawal of $2,500 in operating capital from Capital Lending Group. Bank of America argues that the alleged damages incurred by Nadir and Melissa Alaiwat and Capital Lending Group all stem from the alleged injury suffered by Four A's.

In opposition to the Motion to Dismiss, plaintiffs admit that the additional plaintiffs would not be able to recover under either Count IV (Breach of Covenant) or Count V (Violation of Equal Credit Opportunity Act). Plaintiffs do claim that they are entitled to recover under Counts I - III for the tort actions, but state that many of the facts must be developed as the case progresses.

In Warren v. Mercantile Bank of St. Louis, N.A., 11 S.W.3d 621, 622 (Mo.App. 1999), the Court stated, "[a] shareholder is without standing to sue in his individual capacity for damages to the corporation." See also Alternate Fuels, Inc. v. Cabanas, 538 F.3d 969, 973 (8th Cir. 2008)("Similarly, a corporate officer cannot maintain a personal action against a third party for harm caused to the corporation, unless the officer alleges a direct injury not derivative of the company's injury."). In the instant

case, it was Four A's, acting through Nadir Alaiwat, who applied for the loan with Bank of America. It was also Four A's which was delayed in opening the franchise and it was ultimately Four A's, acting through Nadir Alaiwat who withdrew the application. The other plaintiffs, Nadir and Melissa Alaiwat, individually and Capital Lending Corporation may have contributed money to keep the business in operation, but this does not show that they suffered any separate injury as a direct result of Bank of America's actions or inactions. As the Court noted in Walls v. City of Bridgeton, Missouri, No. 4:08CR927HEA, 2009 WL 2602193 (E.D.Mo. Aug. 24, 2009), "[t]o establish the 'particularized' aspect of the injury, 'the injury must affect the plaintiff in a personal and individual way.'" Id. at *2 (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, n.1 113 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). In the instant case plaintiffs Nadir and Melissa Alaiwat and the Capital Lending Group have not demonstrated that they have suffered any personal or individualized injury as a result of defendant's alleged actions or inactions. Accordingly, defendant's Motion to Dismiss Nadir Alaiwat, Melissa Alaiwat and Capital Lending Group, LLC is hereby **GRANTED** (Doc. # 31).

### B. MOTION FOR SUMMARY JUDGMENT

#### 1. Commercial Credit Statute of Frauds

Bank of America states the Commercial Credit Agreement Statute of Frauds, Mo.Rev.Stat. § 432.047 entitles it to summary judgment on plaintiffs' four common law claims: 1) Negligent Misrepresentation; 2) Fraudulent Misrepresentation; 3) Negligence and 4) Breach of Covenant.

Mo.Rev.Stat. § 432.047 states in part:

7

> 1. For the purposes of this section, the term "credit agreement" means an agreement to lend or forbear repayment of money, to otherwise extend credit, or to make any other financial accommodation.
>
> 2. A debtor may not maintain an action upon or a defense, regardless of legal theory in which it is based, in any way related to a credit agreement unless the credit agreement is in writing, provides for the payment of interest or for other consideration, and sets forth the relevant terms and conditions.

In their Amended Complaint, plaintiffs allege that:

> At the time of the application, Defendant's employee Sumler assured Plaintiff that the loan would be approved within two weeks. (¶ 9).
>
> At the end of September, 2007, upon inquiry by Plaintiff Four A's, Defendant's employee Sumler represented to Plaintiff that the loan application was 'in underwriting' and that approval was imminent. (¶ 10).

Plaintiff's Amended Complaint alleges that Bank of America made oral representations that the loan would be approved within a certain time and also alleges that Mr. Sumler misrepresented the status of the loan when asked about why the process was taking so long. Bank of America argues that because Mr. Alaiwat was seeking a commercial loan for his Jimmy John's franchise, this falls within the description of the statute, "an agreement to lend or forbear repayment of money, to otherwise extend credit." Secondly, the statute states that a debtor, cannot maintain an action "regardless of legal theory in which it is based, in any way related to a credit agreement unless the credit agreement is in writing, provides for the payment of interest or for other consideration, and sets forth the relevant terms and conditions." Bank of America argues that the plaintiffs are attempting to try and recover damages for their reliance on Mr. Sumler's alleged oral promises and that these claims are barred by the Statute of Frauds.

Plaintiffs argue that the Commercial Credit Statute of Frauds has no application to them because they are not debtors of Bank of America and their common law theories have nothing to do with a credit agreement, but rather with the way the loan process was conducted. Plaintiffs argue that they are not attempting to enforce an alleged oral promise to lend money, which is an equitable action, but rather their claims are based on a suit at law for damages based on the misfeasance or malfeasance of Bank of America. Plaintiffs state that their suit is independent of any purported credit agreement.

The Court finds that Missouri's Commercial Credit Agreement Statute of Frauds does not apply in this context. In this case, the parties had not yet reached an "agreement" over the terms of extending credit. Mr. Alaiwat had only filled out some paperwork. No one from the Government Lending Department or from CIT, the outside lender had contacted Mr. Alaiwat either in person or in writing and offered to loan him money. Thus, because there had been no offer, there could be no acceptance and thus there was no agreement between the parties about the extension of credit. Additionally, plaintiffs could not yet be considered "debtors" because they had not yet borrowed any money from Bank of America. Plaintiffs could more accurately be described as "potential debtors" of the Bank. Thus, because they were not yet debtors and because they are not seeking to enforce an oral promise to loan money, the Court finds that Mo.Rev.Stat. § 432.047 does not apply to bar plaintiff's common law claims. As this was the only ground on which Bank of America moved for summary judgment, the Court must deny Bank of America's Motion for Summary Judgment on this basis. However, the Court is concerned that plaintiffs may not have met the elements for their

9

remaining common law claims. However, without any briefing the Court is reluctant to address this issue. Therefore, defendant shall file a brief of no more than ten (10) pages addressing plaintiff's remaining state law claims on or before **July 16, 2010**. Plaintiff may respond and then defendant shall be permitted to file reply suggestions.

**2. Equal Credit Opportunity Act**

The Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691(a)(1) states in part:

> It shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction-
> (1) on the basis of race, color, religion, national origin, sex or marital status, or age (provided the applicant has the ability to contract) . . .

Bank of America states that plaintiffs cannot state a claim under the ECOA because their application was never rejected. See Howard Oaks, Inc. v. Maryland Nat. Bank, 810 F.Supp. 674, 678 (D.Md. 1993). Bank of America also argues that plaintiffs do not have any direct evidence of discrimination and the only remark complained of in the Complaint was a "stray" inquiry regarding the origin of Mr. Alaiwat's name. In order to establish a prima facie ECOA claim, plaintiffs must demonstrate that:

> (1) [he] was a member of a protected class, (2) [he] applied for and was qualified for a loan with the Bank, (3) the loan was rejected despite [his] qualifications, and (4) the Bank continued to approve loans for applicants with similar qualifications.

Rowe v. Union Planters Bank of Southeast Missouri, 289 F.3d 533, 535 (8th Cir. 2002). Plaintiffs do not explain in their suggestions in opposition how they can state a claim for violation of the ECOA when their loan was never rejected. Instead, Four A's withdrew the loan application before Bank of America finished its consideration of the application.

Additionally, the Court finds that plaintiffs have no direct evidence of any discriminatory remarks. "Direct evidence of discrimination may be established through explicit and unambiguous statements of hostility towards persons protected by ECOA, which prove discrimination without inference or presumption." A.B. & S. Auto Service, Inc. v. South Shore Bank of Chicago, 962 F.Supp. 1056, 1060, n. 5 (N.D.Ill. 1997). In the instant case, the only remark that plaintiffs can point to was a question regarding the origin of Mr. Alaiwat's name. This falls far short of direct evidence of discrimination. Accordingly, because plaintiffs have not met the elements of a prima facie case for a violation of the ECOA, the Court hereby **GRANTS** defendant's Motion for Summary Judgment on Count V of plaintiffs' First Amended Complaint.

### 3. Motion to Exclude Testimony of Plaintiff's Expert Michael Kelsay

Until the Court has considered the additional briefing on plaintiff's common law causes of action, it will defer ruling on defendant's Motion to Exclude the Testimony of Michael Kelsay.

### IV. CONCLUSION

For the reasons stated above, the Court hereby **GRANTS** defendant's Motion to Dismiss Plaintiffs Nadir Alaiwat, Melissa Alaiwat and Capital Lending Group, LLC. (Doc. # 31); and **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion for Summary Judgment (Doc. # 44).

Date: 07/06/10　　　　　　　　　　　　**S/ FERNANDO J. GAITAN**, **JR.**
Kansas City, Missouri　　　　　　　　　Fernando J. Gaitan, Jr.
　　　　　　　　　　　　　　　　　　　Chief United States District Judge